FILED
01 MAY 22 PM 3:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAY 22 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| TOMMY ARNOLD, et al., | } |
| Plaintiffs, | } |
| v. | } CIVIL ACTION NO. |
| | } CV-01-AR-1025-J |
| GUIDEONE SPECIALTY MUTUAL INSURANCE COMPANY, | } |
| Defendant. | } |

## MEMORANDUM OPINION

The court has before it the motion of plaintiffs, Tommy Arnold and Kimberly Gilliland Arnold, to remand the above-styled case to the Circuit Court of Marion County, Alabama, from whence it was removed by defendant, GuideOne Specialty Mutual Insurance Company. Plaintiffs concede that their residences and citizenships are diverse from that of defendant, but contend that defendant has not met its burden of proving by a preponderance of the evidence that the amount in controversy, more likely than not, exceeds $75,000, the jurisdictional amount for a diversity removal under 28 U.S.C. §1332. See *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1998).

Depending upon one's viewpoint, it is fortunate or unfortunate that *Bailey v. Wal-Mart Stores, Inc.*, 981 F.Supp. 1415 (N.D. Ala. 1997), has been eliminated as a way to give both a plaintiff and a defendant a departing gift from the federal court upon their being sent back to a state court after a shaky removal. The gift for the

plaintiff, provided temporarily by *Bailey,* was a return to the forum of his choice. The defendant received the greater gift, namely, a guarantee that the plaintiff could never recover more than $75,000. Even though plaintiffs in the instant case disclaim any expectation of ever receiving and/or of ever having had the slightest intent even to hint at an entitlement to as much as $75,000 in this case (plaintiffs are short on chutzpah), the original complaint is sufficiently ambiguous to impose upon this court the obligation, without *Bailey*, to examine and to evaluate what plaintiffs actually alleged, what defendant says it can reasonably deduce from the face of plaintiffs' complaint, and what plaintiffs say in response to defendant's alleged fear of probable liability beyond $75,000. The court must determine from the removal papers whether defendant has proven a sufficient amount in controversy to create subject matter jurisdiction in this court.

Defendant recites a parade of horribles about what has happened historically in Alabama state courts in cases in which the compensatory damages were relatively small, as in the instant case, but in which there was an uncapped claim for punitive damages, followed by a jury trial and a run-away verdict and judgment. Most, if not all, of the cases cited by defendant seem to have involved "home cooking" to some degree, but they antedate *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589 (1996), the seminal case that went up from one of those scary Alabama trial

2

courts all the way to the Supreme Court of the United States.  In *BMW* a lid was put in place.  But, was the lid put on tight enough to stem the flood of kneejerk removals?  The lid was tightened on May 14, 2001, when the Supreme Court decided *Cooper Industries, Inc. v. Leatherman Tool Group*, Inc. ____ U.S. ____, 69 U.S.L.W. 4299.  There the Court replaced the deferential standard for review of a trial court's order reducing or fixing punitive damages with an appellate court's obligation to evaluate *de novo* the constitutional limitation on punitive damages in a particular case.  The lid on punitive damages is now firmly in place.

It is, of course, true that a claim against an insurance company for alleged bad faith refusal to pay a legitimate claim can sometimes get an Alabama jury excited, that is, at the strident insistence of the plaintiff's lawyer who talks convincingly about "sending a message", but this court finds that this particular defendant's fear that a final judgment could reasonably be expected to exceed $75,000 is wholly unfounded.  It is the result of a fearful, if fertile, imagination.  Both sides of this case, as is not unusual, are playing games.  Before the removal, plaintiffs refused a meaningless offer by defendant to cap the claim at $75,000.  Did this improve plaintiffs' negotiating stance or simply constitute a throwing of the gauntlet?  On the other hand, the defendant insurance company removed the case when it would be laughable for one of its underwriters to set up a reserve of

3

$75,000 in recognition of a real exposure in that amount. As a matter of historical and jurisprudential fact, a plaintiff in Alabama has a very small chance of getting a claim of bad faith past an insurance company's summary judgment motion. Any legitimately debatable reason for a denial of an insurance claim forecloses the tort of bad faith. When an insurance company removes a bad faith claim, and really means what it says when it asserts that the amount in controversy exceeds $75,000, it is virtually confessing that it had no excuse whatsoever for not having paid the claim. There is nothing in this defendant's notice of removal to suggest such a *mea culpa*.

The more recent cases, both federal and state, require courts to look realistically at claims for punitive damage based on fraud and/or bad faith, especially if the punitive damages, as claimed or awarded, are badly out of proportion to the actual damages claimed or awarded. This concept was hammered home in *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320 (11th Cir.1999), a case in which the Eleventh Circuit authorizes trial judges to fix precisely the amount of punitive damages so as to guarantee that they do not exceed the constitutional maximum, and this without the traditionally recognized device of *remittitur*. This perhaps unnatural outgrowth of *BMW* teaches that at least within the Eleventh Circuit the Due Process and the Excessive Fines Clauses can trump the Seventh Amendment. Any court that employs the

4

*Johansen* reasoning, with or without the assistance of *Leatherman*, whether a trial court or an appellate court, would never let stand a punitive damages verdict of $75,000 in this case.  This means, of course, that defendant here is either puffing or is artfully speculating for the purpose of escaping from the clutches of the Circuit Court of Marion County.  This court cannot let itself be influenced in cases like these by the bizarre results that have sometimes occurred in rural Alabama courthouses, especially after so-called "tort reform" has finally caught on in Alabama.  Federal trial courts must resist the temptation, upon reading a defendant's computer generated litany of out-sized, overreaching and shocking verdicts in Alabama courts, to forget that federal courts are courts of limited jurisdiction.  To throw open the doors of the federal courthouse for the purpose of providing a safe haven for defendants who fear they will be pillaged in a state courthouse, is no longer the overwhelming temptation it once was.

  A federal court is bound by the principles of federalism to acknowledge the basic efficacy of the state court system.  This principle has been reinforced and particularized now that the Supreme Court of Alabama has learned the lesson of *BMW* and has clearly enunciated an Alabama state judge's obligation to stand in the way of excessive "punitive" damages awards, that is, when the ratio of "punitive" to "compensatory" is so high as to shock the conscience.  See *Life Ins. Co. of Georgia v. Parker*, 726 So.2d 619

5

(Ala.1998), and *Tyson Foods, Inc. v. Stevens*, ____ So.2d ____, 2000 WL 1716977 (Ala. Nov. 17,2000).

> In *Tyson Foods*, the Supreme Court of Alabama pointedly said:
>
> In this case, the punitive damages award of $75,000 is thirty times the compensatory-damages award of $2,500. Considering the facts before us, we find the ratio of 30:1 to be unreasonable.

2000 WL 1716977, at *5.

In the instant case the actual damages do not exceed $1,000. If a verdict of $74,000 in punitive damages were rendered in this case, plus $1,000 in actual damages, for a total recovery of $75,000, the ratio between the two kinds of damages would be 74:1. The *Tyson Foods* rationale would quickly wipe out such an unconstitutional result.

It is, of course, true that the degree of reprehensibility of a defendant's conduct, the defendant's profit from its misconduct, the defendant's financial condition, etc., are factors that may be relevant in a final determination of what it takes to punish a tortfeasor in a specific case. It is also true that these factors are harder to get a handle on before trial than afterwards, when the evidence has been heard by judge and jury. This does not mean, however, that when the admitted compensatory damages are only $1,000, as in this case, that such an actual loss can support a punitive damage award in excess of $74,000. To allow removal in this case could be tantamount to a holding that **all** claims on insurance policies, onto which the plaintiff tacks the tort of bad

6

faith, are removable.  Defendant here cannot avoid relying upon this argument.  By doing so, defendant takes a position that this court cannot accept.

The grapevine says that Alabama trial courts are now routinely ordering remittitur in cases in which punitive damages exceed a ratio of three to one over actual damages.  The days of "tort hell" in Alabama may not be entirely over, but this court finally feels safe in saying after *Leatherman* that it no longer will feel guilty if it sends a defendant like this one to its fate in state court.

The ultimate and controlling proposition is that a removing defendant must prove by a preponderance of the evidence all of the requisites of subject matter jurisdiction.  In this case, defendant has simply failed to prove a core requisite, the jurisdictional amount.  In some other case, perhaps a case lurking just around the corner, this court, in an exercise of judgment, may evaluate a different claim by a different party, with the unhysterical assistance of counsel, and may allow a defendant to successfully remove its case on the basis of diversity where the state court complaint contained a deliberately indeterminate claim for punitive damages.  This, however, is not that case.  And there will be few, if any, such cases in this court's future after *Leatherman*.

A separate order of remand will be entered.

DONE this  22nd  day of May, 2001.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE